UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TYWAN A. JAMES,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )  No. 1:26-cv-00848-JRO-KMB
                                             )
JOHN L. TOMPKINS Tompkins Law,               )
                                             )
                    Defendant.               )

**ORDER SCREENING COMPLAINT AND
REQUESTING TRUST ACCOUNT INFORMATION**

Before the Court is Plaintiff Tywan A. James's complaint against Defendant John L. Tompkins.  Dkt. 1.  James moved to proceed *in forma pauperis*, but the Court lacks the required documents to rule on that order at this time.  Further, as discussed below, the Court exercises its general power to screen complaints to **DISMISS** James's complaint for lack of subject-matter jurisdiction.

**I. *IN FORMA PAUPERIS* MOTION**

By filing this action, Plaintiff is obligated to prepay the $405.00 filing fee unless he is allowed to procced *in forma pauperis*.  He has moved to do so but has not included a copy of his trust account statement for the six-month period preceding the filing of his complaint as required by 28 U.S.C. § 1915(a)(2).  The Court cannot resolve the pending motion without further information from Plaintiff's custodian.  Accordingly, the Court requests Plaintiff's custodian to submit a certified copy of Plaintiff's trust account statement or institutional equivalent for the six-month period from October 24, 2025 to April 24, 2026, and

to do so **no later than June 9, 2026**. The trust account statement should be submitted to the Clerk of the Court and should reference case number No. 1:26-cv-00848-JRO-KMB. Upon receipt of the required financial statement, the Court will rule on the pending motion for leave to procced *in forma pauperis.*

## II. SCREENING STANDARD

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient.  28 U.S.C. § 1915(e)(2)(B). This statute imposes an obligation on the Court, but the Court also has discretion to screen other complaints.  "[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status."  *Rowe v. Shake,* 196 F.3d 778, 783 (7th Cir. 1999).  Further, "[n]otwithstanding any filing fee . . . the court shall dismiss the case at any time" if the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff."  *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010)).  To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell*

2

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Because a defendant must have "fair notice of what . . . the claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that he has been illegally harmed.  *Twombly*, 550 U.S. at 555.  In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

*Pro se* complaints, such as that filed by James, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Arnett*, 658 F.3d at 751.  Nevertheless, any plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

### III. THE COMPLAINT

The Court accepts James's factual allegations as true at the pleading stage but not his legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).  He pursues claims of malpractice, conversion, and negligence against Tompkins.

James, a prisoner residing in New Castle Correctional Facility, engaged Tompkins to represent him on his post-conviction relief proceedings.  James paid Tompkins $2,250 of his $6,000 retainer in various increments between 2021 and 2026.  James had a pending petition for post-conviction relief when he engaged

Tompkins in May of 2021. Tompkins did not appear in the case by October, resulting in the public defender office filing a continuance of the evidentiary hearing set for December 21, 2021.

In March of 2026, James fired Tompkins for failure to investigate his case, talk to witnesses, provide the state with evidence, or otherwise prove James's innocence. James asked for a refund of the $3,050 paid to Tompkins by James and his family. Tompkins sent back only $700. Tompkins stated he had previously refunded the $2,250 when James had fired Tompkins years ago. James never fired Tompkins or gave him permission to send his retainer funds to anyone else.

James seeks repayment of the funds and $25,000 in punitive damages. He argues Tompkins committed malpractice, negligence, and "steal[ing]," which the Court construes as a claim for conversion.

## IV. DISCUSSION

Because James does not establish that his claim meets the requirements for subject-matter jurisdiction, this court cannot hear his complaint. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To consider the merits of a case, a federal "court must have the power to decide the claim before it (subject-matter jurisdiction)." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). "[I]t is axiomatic . . . that courts must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking." *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1238 n.3 (7th Cir. 1984). "If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Subject-matter jurisdiction is usually grounded in one of two doctrines: federal question jurisdiction or diversity jurisdiction. "For federal question jurisdiction to exist, a case must arise 'under the Constitution, laws, or treaties of the United States.'" *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996) (quoting 28 U.S.C. § 1331). The basic statutory framework for subject-matter jurisdiction based on diversity of citizenship lies in 28 U.S.C. § 1332. "A plaintiff properly . . . invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

James asserts that this Court has jurisdiction over his claims under federal question jurisdiction. Dkt. 1 at 4. The Court sees no such basis for jurisdiction. Claims for malpractice, negligence, and conversion all arise under state—not federal—law. *See Tylon v. Kloak*, 98 F. App'x 511, 512 (7th Cir. 2004) (malpractice is a state-law claim that cannot support federal question jurisdiction); *see also Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010) (stating the elements of legal malpractice under Indiana law); *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) (stating the elements of negligence under Indiana

5

law); *Harkins v. Westmeyer,* 116 N.E.3d 461, 472 (Ind. Ct. App. 2018) (stating the elements of a claim of tortious conversion under Indiana law).

Further, James cannot establish diversity jurisdiction. His complaint does not allege the state of Tompkins's citizenship. But even assuming Tompkins lived outside Indiana, the amount in controversy here is only $27,250, which is below the required $75,000 threshold required for diversity jurisdiction.

James does not provide this Court with any means to assure itself of its jurisdiction over his claim. The Court must accordingly declare it lacks subject-matter jurisdiction over James's claim as presented in his complaint.

### V. CONCLUSION

For these reasons, the Court will not rule upon James's Motion for Leave to Proceed *In Forma Pauperis* at this time. Dkt. 2. To facilitate a ruling on this motion, the Court requests Plaintiff's custodian to submit a certified copy of Plaintiff's trust account statement or institutional equivalent for the six-month period from October 24, 2025, to April 24, 2026, and to do so **no later than June 9, 2026**.

James's complaint must be **DISMISSED without prejudice** for lack of subject-matter jurisdiction. Dkt. [1].

James shall have through **June 12, 2026,** to **SHOW CAUSE** why final judgment should not issue due to his failure to establish a basis for the Court's subject-matter jurisdiction.

**SO ORDERED.**

Date:  5/13/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

6

Distribution:

TYWAN A. JAMES
269724
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

WARDEN
NEW CASTLE CORRECTIONAL FACILITY
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362